AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information Associated with the Cellular Device Assigned Call Number (513) 904-3485, Stored at Premises Controlled by T-Mobile | )<br>)<br>)  Case No. 3:21-mj-320<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the **Western** District of **Washington**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 1073 | unlawful flight to avoid prosecution |

The application is based on these facts:
See Attached Affidavit of Fred Zollers

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I, Brent Tabacchi, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the DEA. See 18 U.S.C. §§ 3122(b), 3123(b).

*Fred Zollers*
Applicant's signature

Fred Zollers, TFO of the FBI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by reliable electronic means namely, telephone

Date: August 25, 2021

Peter B. Silvain, Jr.
United States Magistrate Judge

City and state: Dayton, Ohio

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Frederick Zollers, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned call number **(513) 904-3485**, with International Mobile Subscriber Identity / Electronic Serial Number 310260047378155, with listed subscriber(s) "John Doe" (the "**Target Cell Phone 2**"), that is in the custody or control of **T-Mobile**, a wireless telephone service provider headquartered at 3625 132nd Avenue SE, Bellevue, WA, 98006. As a provider of wireless communications service, **T-Mobile** is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require **T-Mobile** to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

4. I am a sworn law enforcement officer in the State of Ohio for fifteen (15) years. I am presently a sworn member of the Montgomery County Sheriff's Office. I am currently assigned to the Federal Bureau of Investigation's (FBI) Southern Ohio Safe Streets Task Force (SOSSTF) as a Task Force Officer (TFO), I have received training in drug trafficking investigations and have participated in numerous narcotics-related investigations. I have also conducted numerous investigations related to the use and possession of firearms. Based on my training and experience, I am aware that it is a federal crime to move or travel in interstate commerce to avoid prosecution.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1073 have been committed, are being committed, and will be committed by Jamarcus Brown. Jamarcus Brown was charged with this crime in the Southern District of Ohio on or about August 10, 2021 and is the subject of an arrest warrant issued on that same date. There is also probable cause to search the information described in Attachment A for evidence of these crimes (as well as to assist locate Brown who is a federal fugitive) as further described in Attachment B.

7. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. The United States, including the FBI, is conducting a criminal investigation of Jamarcus Brown regarding possible violations of 18 U.S.C. § 1073.

9. In or around August 2020, the state of Ohio indicted Brown for trafficking fentanyl (greater than 10 grams, less than 50 grams) in Montgomery County, Ohio, Court of Common Pleas, Case No. 2020CR01251. Brown was ultimately arrested on that case and placed on conditions of bond in the state system. While Brown was on release, the state of Ohio indicted him in three additional cases in the Montgomery County, Ohio, Court of Common Pleas – namely, Case Nos. 2020CR2554 (possession of heroin greater than 10 grams, less than 50 grams); 2020CR3101 (possession of heroin greater than 100 grams/major drug offender); and 2021CR00827 (possession of greater than 100 grams of fentanyl related compounds). Notably, the indictment in Case No. 2021CR00827 occurred on or about April 30, 2021. Each of these matters – all of which involve offenses punishable by a term of imprisonment exceeding one year (i.e., a felonies) – remains pending for trial in the state of Ohio.

10. On or about May 3, 2021, Brown, who had been placed on electric monitoring in Montgomery County, Ohio as a condition of bond in these state cases, cut his ankle monitor and fled from these prosecutions. The state of Ohio has issued warrants for his arrest in those cases.

11. Shortly after Brown's flight, law enforcement received information from a reliable, credible source of information (SOI #1) during mid-May 2021. The SOI #1 has provided information to law enforcement for over three years, which has led to the seizure of contraband and arrests of defendants. In this case, the SOI #1 advised that the SOI #1 had reviewed social media posts in which Brown indicated that, around mid-May 2021, Brown was in California. The SOI #1 has subsequently provided additional information to law enforcement

indicating that Brown now continues to move among the states of California, Florida, Georgia and Ohio to avoid his outstanding state warrants.

12. Law enforcement also received information from a second, reliable credible source of information (SOI #2). (Specifically, as detailed below, law enforcement has been able to corroborate information received from SOI #2). In or around early July 2021, SOI #2 advised law enforcement that Brown had relocated temporarily to North Carolina. That same month, SOI #2 reported that Brown had returned to southern Ohio and provided a specific make, model and color of car that he (Brown) was currently driving in the Dayton metro area. After receiving this information, law enforcement located this vehicle on or about July 19, 2021. When police attempted to traffic stop the vehicle, it led them on an hour-long pursuit that resulted in the driver (believed to be Brown) bailing from the car and being picked up by a second vehicle. Before law enforcement successfully stopped this second vehicle near the Dayton, Ohio area, it already had dropped Brown in the Cincinnati-metro area.

13. On or about July 27, 2021, SOI #1 advised law enforcement that Brown had posted on a social media account a photograph of a large amount of U.S. currency. The photograph that Brown posted appeared to have been taken inside of a residence located at 1110 Sunset Drive, Englewood, Ohio. That same day, law enforcement established surveillance at this location and watched as a Charger arrived and then departed from the residence. After observing the Charger commit traffic violations, marked units stopped it. During the ensuing encounter, a trained narcotics dog alerted on the Charger. A search of the Charger led to the discovery of drugs, bulk cash, and a firearm within it. Brown's brother also was in the car and arrested by police. Following the stop, officers obtained and executed a state search warrant for the Sunset residence. While executing the warrant, law enforcement discovered paperwork from the Ohio

4

Department of Jobs and Family Services addressed to Brown. The paperwork had a number for Brown typed on it – namely, (937) 308-8774 (hereinafter Target Cell Phone 1).

14. On or about July 28, 2021, law enforcement reviewed jail calls that Brown's brother placed following his arrest on July 27, 2021. During one of these calls, Brown's brother contacted Target Cell Phone 1. During the call, Brown's brother spoke with two individuals – an unknown male and a second man who identified himself as "Mar." Investigators recognized the voice of "Mar" as belonging to Lamar Swain, a known and common companion of Brown. Based on my training and experience, I know that, when individuals place jail calls, they know that these communications are recorded and monitored. Given that Brown is a fugitive and is aware that law enforcement is attempting to locate him (as detailed above), I believe that he would be hesitant to speak with his brother on a jail call and instead had his companion, Swain, talk to his brother.

15. During late July 2021, law enforcement queried the Accurint database concerning Target Cell Phone 1 and that number returned to Brown.

16. On or about July 30, 2021, law enforcement obtained a state search warrant to collect ping (*i.e.*, location data) for Target Cell Phone 1. Location information from this warrant provides generalized location information for Target Cell Phone 1 – for instance, a radius of 300 to 800 meters in which Target Cell Phone 1 was located. The movements of Target Cell Phone 1 were consistent with the activities of a fugitive. Target Cell Phone 1 was frequently located near Miller Lane in Dayton, Ohio, which has multiple motels and hotels. Additionally, based on prior investigations, Brown frequented hotels and motels on Miller Lane as part of his drug trafficking activity. Notably, location information also on one occasion placed Target Cell Phone 1 in northern Kentucky during in or around late July or early August 2021.

17. On Wednesday, August 11, 2021, utilizing location data of Target Cell Phone 1, law enforcement members located and seized the physical Target Cell Phone 1 inside of 3054 Jewelstone Drive, Apartment D, Dayton, Ohio 45414. A male identified as Quayshaun Crowder was the sole occupant of the apartment. Crowder allowed law enforcement members to search the apartment and Target Cell Phone 1 was found hidden in a laundry basket on the second floor of the apartment. Law enforcement spoke with Crowder who initially said he found Target Cell Phone 1 on the sidewalk near the apartment complex. In speaking with Crowder, Detective Sean Humphrey recognized Crowder from a previous investigation involving Brown and his drug trafficking organization. Furthermore, Crowder was arrested on November 12, 2020 for a drug related investigation involving a controlled purchase of fentanyl from a "money phone" ran by Brown and his drug trafficking organization. The term "money phone" refers to a cellular phone that drug traffickers utilize to arrange drug transactions. Law enforcement spoke with apartment management on Jewelstone Drive and showed them a picture of Brown. Management reported seeing Brown the day prior, smoking a cigarette out front of apartment D. Law enforcement seized Target Cell Phone 1 on Wednesday, August 11, 2021 at approximately 12:00 p.m.

18. On Friday, August 13, 2021, I received information from Ohio State Highway Patrol Trooper Drew Keuhne regarding a traffic stop investigation conducted in Gallia County, Ohio. Troopers stopped a vehicle occupied by two occupants (hereinafter identified as Cooperating Source 1 "CS1" and Cooperating Source 2 "CS2"). Specifically, as detailed below, law enforcement has been able to corroborate information received from CS1 and CS2. Troopers discovered CS1 was in possession of approximately one ounce of fentanyl. CS1 and CS2 advised they were transporting the suspected fentanyl to a female in Gallipolis, Ohio. CS2 further advised the suspected fentanyl belonged to a male known to him/her as "Jamarcus." CS2

6

said he/she knew the FBI was looking for the male named "Jamarcus" and that the FBI searched an apartment in Dayton, Ohio on Wednesday, August 11, 2021. CS2 was later shown a picture of Brown and CS2 confirmed Brown was the same male he/she knew as "Jamarcus." CS2 said they were transporting the suspected fentanyl to the female in Gallipolis, Ohio for Brown. CS2 said he/she was partying with Brown on Thursday, August 12, 2021 at a residence in Cincinnati, Ohio. CS2 said Brown was with another male, only known as "Mar" and that Brown and "Mar" had a large quantity of fentanyl, U.S. currency, and firearms with them at the residence. CS2 provided a cellular telephone number for Brown of **(513) 904-3485** (i.e., **Target Cell Phone 2**).

19. On Tuesday, August 17, 2021, law enforcement received provider and subscriber information for **Target Cell Phone 2**. The provider for **Target Cell Phone 2** was identified as T-Mobile and the subscriber was identified as "John Doe." Law enforcement learned that **Target Cell Phone 2** was activated on Wednesday, August 11, 2021 after Target Cell Phone 1 was seized by law enforcement. Law enforcement has obtained toll records for **Target Cell Phone 2**, and it remains active. Additionally, analysis of those records (which span from August 11, 2021 through August 16, 2021) has further linked **Target Cell Phone 2** to Brown. For instance, throughout that time, **Target Cell Phone 2** has several calls with (937) 831-0773. Law enforcement knows that (937) 831-0773 is the phone number for Morgan Curry, Brown's girlfriend. Additionally, during this time, **Target Cell Phone 2** had contact with (937) 503-3222. Law enforcement knows that (937) 503-3222 is the phone number for Patricia Drane, Brown's mother.

20. Based on the foregoing, I believe that Brown was in possession of **Target Cell Phone 2**.

7

21. In my training and experience, I have learned that **T-Mobile** is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

22. Based on my training and experience, I know that **T-Mobile** can collect cell-site data on a prospective basis about the subject account for **Target Cell Phone 2**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as **T-Mobile** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

23. Based on my training and experience, I know that T-Mobile also can collect per-call measurement data, which T-Mobile also refers to as the "real-time tool" ("RTT") or PCMD. RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

24. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content. Currently, **Target Cell Phone 2** has an International Mobile Subscriber Identity / Electronic Serial Number 310260047378155

25. Based on my training and experience, I know that wireless providers such as **T-Mobile** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as **T-Mobile** typically collect and retain information about their subscribers' use of the

9

wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the user or users of the subject account for **Target Cell Phone 2** and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the subject account for **Target Cell Phone 2**, without geographic limit, for a period of forty-five days (45) days pursuant to 18 U.S.C. § 3123(c)(1).

27. I further request that the Court direct **T-Mobile** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **T-Mobile**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents

10

because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

*Fred Zollers*

Frederick Zollers
Task Force Officer
FBI

Subscribed and sworn to before me on August 25, 2021 , 2021

Peter B. Silvain, Jr.
United States Magistrate Judge

11

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular device assigned call number **(513) 904-3485**, with International Mobile Subscriber Identity / Electronic Serial Number 310260047378155, with listed subscriber(s) "John Doe" ("the SUBJECT ACCOUNT"), that is in the custody or control of **T-Mobile**, a wireless communications service provider that is headquartered at 3625 132nd Avenue SE, Bellevue, WA, 98006.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

  a. The following information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period **of August 11, 2021 to the present**:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

      ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT ACCOUNT, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as "real-time tool" or "RTT") and/or PCMD.

b. Information associated with each communication to and from the SUBJECT ACCOUNT for a period of 45 days from the date of this warrant, including:

    i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    ii. Source and destination telephone numbers;

    iii. Date, time, and duration of communication; and

    iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the SUBJECT PHONE will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT") and/or PCMD.

3

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 USC s. 1073 involving Jamarcus Brown and his location as a federal fugitive during the period of August 2021 through the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.